J-A12043-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| CLAUDE DE BOTTON, NEWTOWN SQUARE EAST, L.P., NATIONAL DEVELOPERS, INC. AND NEWTOWN G.P., LLC | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| MARC B. KAPLIN, ESQUIRE, BARBARA ANISKO, ESQUIRE AND PAMELA M. TOBIN, ESQUIRE, KAPLIN STEWART MELOFF REITER & STEIN, P.C., BPG REAL ESTATE INVESTORS - STRAW PA., CAMPUS INVESTORS OFFICE B, L.P., CAMPUS INVESTORS 25, L.P., CAMPUS INVESTORS I BUILDING, L.P., CAMPUS INVESTORS H BUILDING, L.P., CAMPUS INVESTORS D BUILDING, L.P., CAMPUS INVESTORS COTTAGES, L.P., CAMPUS INVESTORS OFFICE 2B, L.P., ELLIS PRESERVE OWNERS ASSOCIATION, KELLY PRESERVE OWNERS ASSOCIATION, COTTAGES AT ELLIS OWNERS ASSOCIATION, GENBAR/MANAGEMENT CAMPUS, LLC, BERWIND PROPERTY GROUP, LTD., EXECUTIVE BENEFIT PARTNERSHIP CAMPUS, MANAGEMENT PARTNERSHIP BENEFIT, L.P. AND ELLIS ACQUISITION, L.P. | |
| APPEAL OF: KAPLIN STEWART MELOFF REITER & STEIN, P.C., MARC B. KAPLIN, ESQUIRE, BARBARA ANISKO, ESQUIRE AND PAMELA M. TOBIN, ESQUIRE | No. 1270 EDA 2015 |

Appeal from the Order Entered April 2, 2015
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 101001997
===================================================

J-A12043-16

| | |
|---|---|
| CLAUDE DE BOTTON, NEWTOWN SQUARE EAST, L.P., NATIONAL DEVELOPERS, INC. AND NEWTOWN G.P., LLC | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| MARC B. KAPLIN, ESQUIRE, BARBARA ANISKO, ESQUIRE AND PAMELA M. TOBIN, ESQUIRE, KAPLIN STEWART MELOFF REITER & STEIN, P.C., BPG REAL ESTATE INVESTORS - STRAW PA., CAMPUS INVESTORS OFFICE B, L.P., CAMPUS INVESTORS 25, L.P., CAMPUS INVESTORS I BUILDING, L.P., CAMPUS INVESTORS H BUILDING, L.P., CAMPUS INVESTORS D BUILDING, L.P., CAMPUS INVESTORS COTTAGES, L.P., CAMPUS INVESTORS OFFICE 2B, L.P., ELLIS PRESERVE OWNERS ASSOCIATION, KELLY PRESERVE OWNERS ASSOCIATION, COTTAGES AT ELLIS OWNERS ASSOCIATION, GENBAR/MANAGEMENT CAMPUS, LLC, BERWIND PROPERTY GROUP, LTD., EXECUTIVE BENEFIT PARTNERSHIP CAMPUS, MANAGEMENT PARTNERSHIP BENEFIT, L.P. AND ELLIS ACQUISITION, L.P. | |
| APPEAL OF: BPG REAL ESTATE INVESTORS - STRAW PA., CAMPUS INVESTORS OFFICE B, L.P., CAMPUS INVESTORS 25, L.P., CAMPUS INVESTORS I BUILDING, L.P., CAMPUS INVESTORS H BUILDING, L.P., CAMPUS INVESTORS D BUILDING, L.P., CAMPUS INVESTORS COTTAGES, L.P., CAMPUS INVESTORS OFFICE 2B, L.P., ELLIS PRESERVE OWNERS ASSOCIATION, KELLY PRESERVE OWNERS ASSOCIATION, COTTAGES AT ELLIS OWNERS ASSOCIATION, | |

- 2 -

J-A12043-16

GENBAR/MANAGEMENT CAMPUS, LLC,
BERWIND PROPERTY GROUP, LTD.,
EXECUTIVE BENEFIT PARTNERSHIP
CAMPUS, MANAGEMENT PARTNERSHIP
BENEFIT, L.P. AND ELLIS ACQUISITION,
L.P.

No. 1301 EDA 2015

Appeal from the Order Entered April 2, 2015
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 101001997

BEFORE:  BENDER, P.J.E., PANELLA, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:          **FILED FEBRUARY 03, 2017**

Appellants, Kaplin Stewart Meloff & Stein, P.C., Marc B. Kaplin, Esquire, Barbara Anisko, Esquire, Pamela M. Tobin, Esquire (collectively "Kaplin"), BPG Real Estate Investors-Straw Pa., and others listed in the caption (collectively, excluding Kaplin, "BPG") appeal from the order entered in the Court of Common Pleas of Philadelphia County on April 2, 2015.  On remand from this Court's memorandum decision of February 11, 2014, the trial court directed Kaplin and BPG, for the second time, to produce certain privileged communications to Appellees Claude de Botton, Newtown Square East, L.P., National Developers, Inc., and Newtown G.P., LLC (collectively

_____

[*] Former Justice specially assigned to the Superior Court.

- 3 -

"de Botton").[1] After careful review, we vacate and remand for further proceedings.

A prior panel of this Court detailed the lengthy factual and procedural histories of this matter; as such, we will not repeat them here and instead incorporate them by reference. *See De Botton v. Kaplin Stewart Reiter & Stein, P.C.*, Nos. 1635 EDA 2012 & 1734 EDA 2012, unpublished memorandum at 1-12 (Pa. Super. filed Feb. 11, 2014).

_____

[1] Pennsylvania law provides that:

> An appeal may be taken from: (1) a final order or an order certified as a final order (Pa.R.A.P. 341); (2) an interlocutory order as of right (Pa.R.A.P. 311); (3) an interlocutory order by permission (Pa.R.A.P. 312, 1311, 42 Pa.C.S.A. § 702(b)); or (4) a collateral order (Pa.R.A.P. 313).

*Veloric v. Doe*, 123 A.3d 781, 784 (Pa. Super. 2015) (citation omitted).

Rule 313(b) defines a collateral order as an order that is "separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313(b). While "most discovery orders are deemed interlocutory and not immediately appealable because they do not dispose of the litigation...[,] certain discovery orders, particularly those involving ostensibly privileged material, have been found to be immediately appealable as collateral orders pursuant to Pa.R.A.P. 313." *Veloric*, 123 A.3d at 784 (citations omitted); *see also Rhodes v. USAA Cas. Ins. Co.*, 21 A.3d 1253, 1258 (Pa. Super. 2011) (citation omitted) (stating that "discovery orders involving purportedly privileged material are appealable because if immediate appellate review is not granted, the disclosure of documents cannot be undone and subsequent appellate review would be rendered moot"). Here, the April 2, 2015 order compels the disclosure of privileged information and, thus, it is appealable and subject to this Court's review under the collateral order doctrine. *See Commonwealth v. Harris*, 32 A.3d 243, 249 (Pa. 2011).

2014 WL 10981626, at *1-6 (Pa. Super. Feb. 11, 2014) (unpublished memorandum). For the purposes of this appeal, we will briefly detail the relevant factual and procedural history as follows.

In April 2009, BPG brought federal antitrust claims and related state law claims against de Botton. The federal court dismissed the antitrust claims, but declined to exert supplemental jurisdiction over the state law claims and, therefore, the remaining claims were remanded to the Delaware County Court of Common Pleas where they remain pending. On October 15, 2010, despite the ongoing proceedings in Delaware County, de Botton filed a complaint against Kaplin and BPG in the Philadelphia County Court of Common Pleas, alleging statutory wrongful use of civil proceedings[2] and common law abuse of process. Specifically, de Botton alleged that Kaplin and BPG filed federal antitrust claims against de Botton without probable cause and for an improper purpose.

On April 13, 2011, de Botton served interrogatories and requests for production of documents on Kaplin and BPG. Kaplin and BPG objected, claiming that such items were not discoverable under the attorney-client privilege and/or work product doctrine. Thereafter, the parties prepared a "Stipulated Non-Waiver and Clawback Agreement" (hereinafter "clawback agreement"), and on October 26, 2011, the trial court approved the

---

[2] **See** Dragonetti Act, 42 Pa.C.S. §§ 8351-55.

agreement.[3]  In accordance with the clawback agreement, Kaplin produced 290 pages of documents along with a privilege log detailing withheld documents.

Unsatisfied with the produced documents, on February 7, 2012, de Botton filed a motion to compel discovery and for an *in camera* review of the redacted and withheld information.  In response, Kaplin and BPG filed a motion to stay the proceedings, or in the alternative, sought protection under the attorney-client privilege and/or the work product doctrine.  The trial court denied Kaplin and BPG's motion to stay on March 21, 2012, and ordered the production of the un-redacted communications for an *in camera* review.  On May 22, 2012, the trial court found the disputed communications to be relevant, and therefore discoverable, and ordered BPG and Kaplin to produce certain documents within ten days.  **See** Trial Court Findings and Order, 5/22/12, at 9-10.  Kaplin and BPG timely appealed.

On appeal, this Court observed that although the trial court compelled the production of 30 documents, it erred as a matter of law by failing to discuss specifically the attorney-client privilege or work product doctrine, as they may relate to the documents.  Instead, the trial court relied upon a broad and generalized rationale that the documents were discoverable

_____

[3] A clawback agreement permits the production of documents without an intent to waive privilege and requires the return of mistakenly produced documents.  **See** Fed.R.Civ.P. 26, Comment (2006 Amendment, Subdivision (f)).

because they were "relevant." We further commented that the trial court's analysis lacked a discussion of the applicability, if any, of the parties' clawback agreement. *See De Botton*, Nos. 1635 EDA 2012 & 1734 EDA 2012, unpublished memorandum at 22. Ultimately, we determined that the trial court's omission prevented us from addressing BPG and Kaplin's issues and from ascertaining whether the trial court had properly compelled the production of the disputed documents. Therefore, we vacated the trial court's May 22, 2012 order and remanded "to have the trial court apply the factors for disclosing or not disclosing the documents at issue, particularly in the context of the claims raised in this case, … and a court-approved clawback agreement." *Id.* (internal citations omitted).

Following remand, the trial court issued its findings and entered an order on April 2, 2015. At the outset, the trial court noted that the communications in question were protected by both the attorney-client privilege and the work product doctrine, neither of which had been waived by Appellants. However, the trial court also concluded that the documents were relevant because they served as a basis for the federal anti-trust complaint. Based upon the trial court's understanding of the holding in *St. Luke's Hospital of Bethlehem v. Vivian*, 99 A.3d 534 (Pa. Super. 2014), Pa.R.C.P. 4003.3, and Pa.R.C.P. 4003.1(b), the trial court discussed the admissibility of the thirty reference documents as follows:

Documents 1 and 2

The withheld communications reference the identity and propriety of parties which the BPG defendants were thinking about adding to provide the necessary parties to create the multiple parties so that their claim for Civil Conspiracy could be made out.

Documents 8-21

These are a series of connected e-mails which begin with a discussion of de Botton's Motion to Dismiss the original Complaint in apparent preparation to filing an Amended Complaint as an answer thereto. One part of these emails is the discussion of the legal issues which made the Complaint subject to attack and BPG's planned response. The central piece of these emails is a continuing discussion of the Opinions of a non-testifying expert BPG retained who raised three principle criticisms of the theory of liability outlined in BPG's Complaint. The expert is represented as having opined that there was a "significant hurdle" presented to the success of the BPG Complaint by certain established federal doctrines. The continuing discussion also focused on certain components of the forthcoming civil conspiracy count which will become part of BPG's soon to be filed Amended Complaint.

Document 23

In this document, the changes to be implemented in the Amended Complaint to address the issues raised in the de Botton Motion to Dismiss. Also discussed are the non-testifying expert's recommendations to answer the legal defects pointed out in the Motion to Dismiss as well as adding certain factual allegations to establish a defense to certain federal doctrine issues which work against BPG's claims.

Documents 24 and 27

This document … falls under the Subject line "Re: Possible other Co-conspirators." It discusses adding a claim ancillary to their abuse of process claim and the inability to currently identify the ownership of defendant entities which inform the conspiracy claim or distinguish between parties so as to form a conspiracy claim.

Document 30

Discusses ways to defeat certain First Amendment protections that might be available to de Botton. Further discusses ways to

support BPG's theory of a conspiracy by de Botton *et al*, to injure BPG.

Document 33

Raises issues concerning amendments to subsequent Amended Complaints and the naming of parties or the lack of such naming of parties as an impediment to the success of the "Anti-trust claims."

Document 36 (and 46)

These are identified as duplicates and appear to have no identified redacted sections. They are fully producible.

Document 38

This is a discussion of factors under consideration by BPG in their attempts to establish a relevant geographic market which was the fatal flaw in its Anti-Trust Complaint.

Document 39

Lengthy email discussing a draft of the Amended Complaint outlining the factors involved in establishing the requisite relevant geographic market aspect of the Federal Anti-Trust Complaint.

Document 48

Discussion of the decision to add other entities to the First Amended Complaint which is related to the congregation of multiple parties for purposes of proving a civil conspiracy. A further discussion on the advisability of adding a claim of "false statement" as an element of limiting or compromising certain statements immunized under the First Amendment speech protection and federal doctrine consistent therewith.

Document 49 and 54

Duplicate of 48 discoverable for the same reasons.

Document 53 and 60

Discussion of adding parties to the Amended Complaint.

Document 57

This is a working draft of the Amended Complaint. There were no parts of this document identified as redacted.

Document 59

Discussion concerning relevant geographic market. (No redacted statements identified).

Document 61

Discussion of additional parties and "false statement" essentially the same as Document 48 above.

Document 62

Similar to other documents discussing the advisability of adding parties to the Amended Complaint.

Document 82

Third paragraph of email is tips on writing, neither relevant, interesting nor producible – could eliminate from order. Fourth paragraph, a comment on tackling a certain federal doctrine. [I]n hindsight, it is neither relevant, interesting nor producible.

Document 83

On further review, not producible for the same reasons as Document 82.

Document 88

Not provided to the Court. Cannot review.

In review, the above identified communication should be produced because they are relevant as to whether the BPG Federal Complaint was brought without probable cause and in bad faith for the purpose of retaliating against de Botton. The attorney-client privilege should afford no shield for these statements.

Considering the above and the Record as a whole, all of the documents ordered to be produced per the Order of 5/22/2012 (referenced herein) except for document 82, 83 are again ordered to be produced in un[-]redacted form within twenty (20) days of the date of this Order.

Trial Court Findings and Order, 4/2/15, at 9-12 (footnote omitted).

Again, Kaplin and BPG filed timely notices of appeal. Kaplin raises the

following issues for our review:

1. On remand, did the trial court renew its error by ordering the production of attorney-client privileged communications on the basis that the communications were "relevant" in disregard of this Court's prior decision upholding the privilege?

2. On remand, did the trial court renew its error by ordering the production of attorney work product on the basis that the work product was "relevant" in disregard of this Court's prior decision upholding work product immunity?

3. Should this case be stayed and assigned to a different trial court given the trial court's persistent refusal to enforce attorney-client privilege and work product immunity and the waste of judicial resources that this appeal has engendered particularly while the underlying matter in this Dragonetti action remains pending in the Delaware County Court of Common Pleas?

Kaplin's Brief at 4.

BPG raises the following issues for our review:

1. Did the trial court err in its Order of April 1, 2015,[4] by directing [Kaplin] to produce documents protected by the attorney-client privilege that exists between Kaplin [] and BPG?

2. Where there has been no argument or finding that the attorney-client privilege was waived by BPG (whether by asserting the advice of counsel defense or otherwise) with respect to its privileged communications with Kaplin [], did the trial court err in its [April 2, 2015 Order], by directing Kaplin [] to produce documents protected by the attorney-client privilege that exists between Kaplin [] and BPG?

3. Where there has been no argument or finding that a recognized exception to the attorney-client privilege applies, did the trial court err in its [April 2, 2015 Order], by directing Kaplin [] to produce documents protected by the attorney-client privilege that exists between Kaplin [] and BPG?

---

[4] While the Order is dated April 1, 2015, it was entered on April 2, 2015, and will be referred to herein as the "April 2, 2015 Order."

4.     Did the trial court err in its [April 2, 2015 Order], by directing Kaplin [] to produce documents protected by the attorney-client privilege that exists between Kaplin [] and BPG based on **St. Luke's Hospital of Bethlehem v. Vivian**, 99 A.3d 534 (Pa. Super. 2014) and the comments to Pennsylvania Rule of Civil Procedure 4003.3, where **St. Luke's** and the comments to Rule 4003.3 address exceptions to the protections afforded by Rule 4003.3 and do not address exceptions to the attorney-client privilege?

5.     Did the trial court err in its [April 2, 2015 Order], by directing Kaplin [] to produce documents protected by the attorney-client privilege that exists between Kaplin [] and BPG based on Pennsylvania Rule of Civil Procedure 4003.1, where Rule 4003.1 does not permit a court to compel a party to produce attorney-client privileged communications merely because those communications appear to be reasonably calculated to lead to the discovery of admissible evidence?

6.     Where the parties entered into a Stipulated Non-Waiver Agreement and Order, which was signed by the trial court on October 26, 2011, and where that Agreement and Order expressly provides that the parties have not waived the attorney-client privilege, did the trial court err in its [April 2, 2015 Order], by directing Kaplin [] to produce documents protected by the attorney-client privilege that exists between Kaplin [] and BPG?

BPG's Brief at 4-6 (footnote omitted).

Kaplin's first and second issues, and all of BPG's issues, challenge the trial court's finding that the disputed documents were discoverable. Kaplin contends that because the trial court determined that *both* the work product doctrine and attorney-client privilege apply to the disputed documents, it was error for the trial court to order production simply because the documents were "relevant." BPG echoes Kaplin's argument, maintaining that the trial court erred because it found that these privileges were not waived and there is no exception permitting the court to circumvent the

privilege. Additionally, BPG argues that the trial court erred in applying the comments to Rule 4003.3 to documents protected by the attorney-client privilege, as Rule 4003.3 is applicable only to the work product doctrine. Finally, BPG argues that the trial court erred by failing to follow its own non-waiver order enforcing the parties' clawback agreement. Once again, we find that Kaplin and BPG are entitled to relief.

Our standard of review for discovery orders is well-settled. "Generally, on review of an order concerning discovery, an appellate court applies an abuse of discretion standard." *Berkeyheiser v. A-Plus Investigations, Inc.*, 936 A.2d 1117, 1124 (Pa. Super. 2007) (citations omitted). To the extent that the challenge to the discovery order involves a question of law, our scope of review is plenary. *See id.* "Whether the attorney-client privilege or the work product doctrine protects a communication from disclosure is a question of law." *In re Thirty-Third Statewide Investigating Grand Jury*, 86 A.3d 204, 215 (Pa. 2014) (citations omitted).

The attorney-client privilege provides that, "[i]n a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client." 42 Pa.C.S. § 5928. The attorney-client privilege exists to "foster a confidence between attorney and client that will lead to a trusting and open dialogue." *Gocial v. Independence Blue Cross*, 827

A.2d 1216, 1222 (Pa. Super. 2003). However, "the privilege applies only to confidential communications made by the client to the attorney in connection with providing legal services." *Id.* (citations omitted).

As we stated in our previous decision in *de Botton*:

> A two-part inquiry has been used to resolve disputes over disclosure of communication for which attorney-client privilege has been asserted. The first part of the inquiry is whether attorney-client privilege does indeed apply to a particular communication. If the court holds that the privilege does apply, then the court must engage in the second part of the inquiry; whether an exception or waiver applies, thereby overcoming the privilege and permitting disclosure.
>
> [*National Mut. Inc. Co. v. Fleming*, 924 A.2d 1259,] 1265-66 [(Pa. Super. 2007)] (citation omitted). The inquiry entails shifting the burdens of proof:
>
> > The party who has asserted attorney-client privilege must initially set forth facts showing that the privilege has been properly invoked; then the burden shifts to the party seeking disclosure to set forth facts showing that disclosure will not violate the attorney-client privilege, e.g., because the privilege had been waived or because some exception applies.
>
> *Id.* at 1266 (citation omitted). The *Fleming* Court conducted a comprehensive, detailed review of the document in question in resolving whether privilege attached. *Id.* at 1269. The trial court should also review the documents at issue, "rule on the relevance of each [document] or explain why the privileges raised were inapplicable." *Gocial*…, 827 A.2d … [at] 1223 [] (remanding to have trial court "issue a ruling with respect to each document actually sought").

*De Botton*, Nos. 1635 EDA 2012 & 1734 EDA 2012, unpublished memorandum at 15.

The work product doctrine is codified in Pennsylvania Rule of Civil Procedure 4003.3 and provides, in relevant part, as follows:

- 14 -

> [D]iscovery shall not include disclosure of the mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal research or legal theories. With respect to the representative of a party other than the party's attorney, discovery shall not include disclosure of his or her mental impressions, conclusions or opinions respecting the value or merit of a claim or defense or respecting strategy or tactics.

Pa.R.C.P. 4003.3. The purpose of this Rule is to "immunize the lawyer's mental impressions, conclusions, opinions, memoranda, notes, summaries, legal research and legal theories, nothing more." *Id.*, Explanatory Comment. However, we note that while the attorney-client privilege and the work product doctrine "overlap, they are not coterminous." *Gillard v. AIG Ins. Co.*, 15 A.3d 52, 59 (Pa. 2011).

Specifically, we have recognized that the work product doctrine is not absolute.

> There are, however, situations under the Rule where the legal opinion of an attorney becomes a relevant issue in an action; for example, an action for malicious prosecution or abuse of process where the defense is based on a good faith reliance on a legal opinion as counsel. The opinion becomes a relevant piece of evidence for the defendant, upon which defendant will rely. The opinion, even though it may have been sought in anticipation of possible future litigation, is not protected against discovery. A defendant may not base his defense upon an opinion of counsel and at the same time claim that it is immune from pre-trial disclosure to the plaintiff.

*Id.*

Instantly, we note that the trial court patently failed to comply with our directive upon initial remand. As stated *supra*, we directed the trial court to: (1) determine whether the documents at issue were protected by

attorney-client privilege or the work product doctrine; and (2) discuss the applicability of the parties' clawback agreement. **See De Botton**, Nos. 1635 EDA 2012 & 1734 EDA 2012, unpublished memorandum at 23. While the trial court determined that the documents at issue were protected by both the attorney-client privilege and the work product doctrine, it failed to come to this conclusion by specifying why each document was subject to these privileges.[5] Without individualized explanations as to why each document is protected by either the attorney-client privilege, work product doctrine, or both, we are unable to determine whether the trial court properly ordered disclosure of these documents. **See Fleming**, 924 A.2d at 1268-69. Further, the trial court failed to even address the issue of the parties' clawback agreement.

Accordingly, we are constrained to vacate the order and remand to have the trial court: (1) apply the test set forth in **Fleming** to each document at issue to determine whether each document is subject to the protections of the attorney-client privilege; and (2) apply the directives of Rule 4003.3 to determine whether each document is properly protected by the work product doctrine. Additionally, once the trial court determines if

---

[5] We recognize that the trial court rendered individualized rulings with respect to each document; however, these rulings were made with respect to the relevancy of each document to de Botton's case, not the applicability of the attorney-client privilege or the work product doctrine. Thus, the trial court's individualized rulings did little to help our analysis of the applicability of these privileges.

either, or both, of the privileges apply to each specific document, we direct the trial court to determine the effect of the parties' clawback agreement on the documents at issue, as well as the effect of any exception to either the attorney-client privilege or the work product doctrine on each protected document.

Lastly, in Kaplin's final issue on appeal, Kaplin asks for a stay of this matter while the Delaware County action remains pending. There is some question as to whether this Court has jurisdiction to order a stay in the Philadelphia County Court of Common Pleas under the current procedural posture of this case. However, in light of the fact that we are remanding this matter to the trial court, we need not reach a conclusion regarding jurisdiction to issue a stay at this time. Nevertheless, we point out that, in the interests of judicial economy and to avoid piecemeal litigation, it seems it would be most prudent to stay this action until completion of the case in the Delaware County Court of Common Pleas. *See Betts Indus., Inc. v. Heelan*, 33 A.3d 1262, 1268 (Pa. Super. 2011) (citing *PNC Bank v. Bluestream*, 14 A.3d 831, 843-44 (Pa. Super. 2010) (ordering the stay of one proceeding in the interests of judicial economy)). Absent a stay, it is apparent that the various disputes between these parties will only continue to consume significant judicial resources. Moreover, it is likely that the issues raised in the present matter will be decided in the pending Delaware County action.

Order vacated. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judge Panella joins this memorandum.

President Judge Emeritus Stevens files a concurring memorandum in which Judge Panella joins.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/3/2017