J-S96032-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| FINKLE DISTRIBUTORS INC., N/K/A FDI HOLDINGS INC. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| TROY M. HERZOG, INDIVIDUALLY, AND D/B/A THE HUB | |
| Appellee | No. 863 WDA 2016 |

Appeal from the Order Dated May 17, 2016
In the Court of Common Pleas of McKean County
Civil Division at No(s): 2009 AD 10148

BEFORE:  BENDER, P.J.E., BOWES, J., and SOLANO, J.

MEMORANDUM BY SOLANO, J.:                 **FILED FEBRUARY 23, 2017**

Appellant, Finkle Distributors, Inc., now known as FDI Holdings, Inc., ("Finkle") appeals a May 17, 2016 order of the Court of Common Pleas of McKean County that found spoliation and entered a preclusion order as a sanction.  The trial court's order is interlocutory, and we have no jurisdiction to review it.  We therefore quash the appeal.

This action seeks payment for the sale of merchandise.  Appellee, Troy M. Herzog, owned The Hub, a convenience store in Smethport, McKean County.  Compl., 2/4/09, at 2 ¶ 2; Answer to Compl. & New Matter, 10/28/09, at 2 ¶ 2.  According to the trial court, Herzog "had managed it in the past with the assistance of family members, and now, all management

responsibilities are handled by New Horizon LTBS, believed to be a family held entity." Tr. Ct. Op., 7/26/16, at 1.

For several years, Finkle sold certain goods, wares and merchandise — such as tobacco products, candies, snack foods, and novelty items — to Herzog for resale to third parties. Compl., 2/4/09, at 2-3 ¶ 3; Answer to Compl. & New Matter, 10/28/09, at 2 ¶ 3; Tr. Ct. Op., 7/26/16, at 1-2. The trial court explained:

> A sales representative for [Finkle] regularly took [Herzog]'s orders and visited the store to suggest merchandise. After the orders were accepted and processed, [Finkle]'s delivery drivers would bring the goods to The Hub and take back unsold or expired merchandise. [Finkle] also issued credits from time to time for returned merchandise, coupons, etc.

Tr. Ct. Op., 7/26/16, at 1-2.

On February 4, 2009, Finkle commenced the current action by complaint, alleging that Herzog failed to pay Finkle for merchandise that he had purchased between May and June 2008. Compl., 2/4/09, at 2-3 ¶¶ 3-4 & Ex. B; Tr. Ct. Op., 7/26/16, at 2. Finkle sought a balance owed of $83,989.12, plus $20,997.28 in counsel fees (an amount equal to 25% of the outstanding balance), with interest calculated at a rate of 18% per annum beginning on June 20, 2008. Compl., 2/4/09, at 3 ¶ 9, *ad damnum* clause & Ex. B at 7.

After the complaint was amended, Herzog filed an answer and new matter on October 28, 2009, in which he denied that the exhibits attached to the complaint provided documentary evidence in support of Finkle's claim

- 2 -

and asserted that he might be entitled to credits against the amounts claimed for returned merchandise, merchandise not actually delivered, payments made, coupons, and promotional items. Answer to Compl. & New Matter at 1-3 ¶¶ 3, 6-8, 12-16.

In 2010, during the pendency of this action, Finkle executed an "Asset Purchase Agreement under which Core-Mark Midcontinent, Inc. purchased almost all of Finkle's assets. Tr. Ct. Op., 7/26/16, at 2. During discovery, Finkle produced a July 28, 2014 affidavit from its former president, Dan Finkle, that averred the following with respect to application of the Asset Purchase Agreement to the Herzog receivable:

> Troy M. Herzog d/b/a The Hub was an "Excluded Asset" from the Asset Purchase Agreement with Core-Mark Midcontinent, Inc. As a result, Finkle Distributors, Inc. and its successor FDI Holdings, Inc. retained all of the records on The Hub account. Core-Mark Midcontinent, Inc. has no records on The Hub file.
>
> Upon review of the business records of FDI Holdings, Inc. which contains the records of the "Excluded Assets" that were originally part of Finkle Distributors, Inc., I have determined that there are no existing collection notes on this file. There is a chance that the records previously existed years ago but were lost in the transfer of records to new storage facilities. I did not intentionally destroy any records.

Br. in Supp. of Mot. for Summ. J., 8/25/14, Ex. 3, at 1 ¶¶ 3-4.

On August 25, 2014, Herzog moved for summary judgment. His motion claimed that the Herzog receivable was not an "Excluded Asset" under the Asset Purchase Agreement and that the affidavit from Dan Finkle attesting to Finkle's lack of any documents to support its claim to the

receivable showed that the asset had been sold to Core-Mark. Herzog argued that the sale meant that Finkle was not a real party in interest with respect to any claim for repayment of the receivable and that Herzog therefore was entitled to judgment on Finkle's claim.

On October 10, 2014, Herzog filed a motion *in limine* seeking (1) to exclude alleged parol evidence related to proof of ownership of the account, Mot. *in Limine*, 10/10/14, at 2-3 ¶¶ 2-5, and (2) sanctions for alleged spoliation of evidence by Finkle., **id.** at 3-5 ¶¶ 6-5. With respect to parol evidence, Herzog argued that the language of the Asset Purchase Agreement showed that the Herzog receivable had been sold to Core-Mark and that the Agreement's integration clause prevented use of parol evidence to contradict that language. With respect to sanctions, Herzog argued that Dan Finkle had admitted in depositions that computer files would have contained documents, including records similar to invoices, that Finkle never produced to Herzog, despite repeated requests and court orders to do so. Based on Dan Finkle's admission regarding those unproduced computer records and his affidavit stating that the relevant records may have been lost, Herzog argued that there had been a spoliation of evidence and that, as a sanction, the court should enter summary judgment in favor of Herzog.

On December 22, 2014, the trial court granted Herzog's motion *in limine* and precluded parol evidence about the Asset Purchase Agreement. With that evidence excluded, the trial court also granted Herzog's motion for

summary judgment on the ground that the sale of the receivable under the Asset Purchase Agreement meant that Finkle was not a real party in interest and could not sue Herzog on its claim. Finkle appealed to this Court, and, on March 9, 2016, we vacated the trial court's order. We held that the Asset Purchase Agreement was ambiguous and that the trial court therefore erred in excluding parol evidence that would bear on whether the Agreement should be interpreted to convey the Herzog receivable to Core-Mark or to include the receivable among assets being retained by Finkle. We remanded for further proceedings in light of that ruling.[1]

On May 17, 2016, the trial court entered an order that, in compliance with this Court's ruling, denied Herzog's motion *in limine* for preclusion of parol evidence regarding the meaning of the Asset Purchase Agreement. At the same time, however, the court granted Herzog's spoliation motion, concluding "that material documents, such as invoices, credit memos, and collection notes were lost or destroyed." Tr. Ct. Op., 7/26/16, at 6. Having determined that spoliation had occurred, the court considered "[w]hether dismissal of [Finkle's] action is an appropriate remedy." **Id.** The court noted that Herzog's motion "argued that Summary Judgment **or a preclusion of Appellant's presentation of evidence** was warranted in the form of sanctions." **Id.** (emphasis added). Rather than entering

---

[1] **Finkle Distributors, Inc. v. Herzog**, No. 141 WDA 2015 (Pa. Super., Mar. 9, 2016) (unpublished memorandum).

summary judgment, the court opted for the alternative sanction suggested

by Herzog and included the following paragraph in its May 17, 2016 order:

> [Herzog's[2]] Motion with respect to spoliation of evidence is GRANTED. Plaintiff is prohibited from introducing into evidence documentation of accounts receivable as Plaintiff had an affirmative duty to preserve such evidence; Plaintiff failed to act accordingly; and Plaintiff has failed to demonstrate sufficient explanation as to why or how the records were lost. . . .

The order did not enter summary judgment. Accordingly, the docket does

not reflect any dismissal or entry of judgment ending the case.

On June 13, 2016, Finkle, through counsel, filed a notice of appeal.

The appeal seeks review of the following issues:

> 1.    Whether dismissal of [Finkle]'s action is an appropriate remedy.
>
> 2.    Whether an evidentiary hearing should have been held by the Court on the issue of spoliation of evidence.
>
> 3.    Whether there is any evidence that any material documents were lost or destroyed by [Finkle].

Finkle's Brief at 4. However, we have no jurisdiction to hear Finkle's appeal

because the May 27, 2016 order from which it seeks to appeal is

interlocutory and unappealable.[3]

---

[2] The order erroneously referred to the spoliation motion as having been filed by "Plaintiff" (that is, Finkle), but it was Herzog's motion.

[3] On July 6, 2016, this Court issued upon Finkle an order to show cause as to whether the appeal was properly before us. On July 15, 2016, Finkle responded by a letter to this Court's Prothonotary that stated, "although the trial court's order did not technically put Appellant 'out of court,' the effect of

*(Footnote Continued Next Page)*

Pennsylvania law makes clear that:

[A]n appeal may be taken from: (1) a final order or an order certified as a final order (Pa.R.A.P. 341); (2) an interlocutory order as of right (Pa.R.A.P. 311); (3) an interlocutory order by permission (Pa.R.A.P. 312, 1311, 42 Pa.C.S.A. § 702(b)); or (4) a collateral order (Pa.R.A.P. 313).

A final order is one that disposes of all the parties and all the claims, is expressly defined as a final order by statute, or is entered as a final order pursuant to the trial court's determination. [T]he appealability of an order goes directly to the jurisdiction of the Court asked to review the order."

*Veloric v. Doe*, 123 A.3d 781, 784 (Pa. Super. 2015) (quoted citation and quotation marks omitted).[4]

Based on Finkle's discovery responses and admission to the loss of relevant documents, Herzog argued that summary judgment *or* a preclusion of Finkle's presentation of certain evidence was warranted as a sanction. The trial court chose to preclude Finkle's presentation of evidence. It did not grant summary judgment or dismissal, and did not otherwise preclude Finkle from presenting its case. The order of May 17, 2016, therefore did not dispose of any claims in this matter and is not a final appealable order.

_(Footnote Continued)_ _____

the order precludes Appellant from introducing evidence of the account receivable and effectively prevents Appellant from litigating its claim at the trial court level." On July 19, 2016, we held that the order to show cause was discharged, but added: "[t]his ruling, however, is not binding upon this Court as a final determination as to the propriety of the appeal."

[4] The reference in *Veloric* to an order "expressly defined as a final order by statute" relates to former Rule 341(b)(2), which was rescinded in April 2016.

*Veloric*, 123 A.3d at 784.[5]   Finkle does not argue that there is any other basis for appellate jurisdiction here.   It does not assert that the trial court's order is appealable as of right under Pa.R.A.P. 311 or is a collateral order under Pa.R.A.P. 313, and it does not request permission to take an interlocutory appeal under Pa.R.A.P. 312.   Thus, we conclude that we are without jurisdiction to review the May 17, 2016 order.   *Veloric*, 123 A.3d at 784.

Appeal quashed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/23/2017

---

[5] In responding to our order to show cause, Finkle quoted the statement in *Schaffer v. Litton Systems, Inc.*, 539 A.2d 360, 361 (Pa. Super. 1988), that "[c]ertain orders which have not put a litigant 'out of court' or completely terminated the litigation have nevertheless been held to possess sufficient aspects of finality to be appealable because the effect of the order has been to preclude the litigant from [presenting its claim]." *Schaffer* and other cases expressing a similar view reflected the law prior to the amendment of Appellate Rule 341(b) in 1992 to define a final order as one that "disposes of all claims and of all parties."   Under the 1992 amendments, orders that were appealable under those cases no longer qualify as final appealable orders.   *See Noll ex rel. Noll v. Harrisburg Area YMCA*, 643 A.2d 81, 83 & n.2 (Pa. 1993).