J-A20022-15

2015 PA Super 194

GARY VELORIC AND NANCY VELORIC,     IN THE SUPERIOR COURT OF
                       PENNSYLVANIA

Appellees

v.

JOHN DOE AND/OR JANE DOE,

APPEAL OF: JOHN DOE,

Appellant               No. 121 EDA 2015

Appeal from the Order Entered December 1, 2014
In the Court of Common Pleas of Montgomery County
Civil Division at No(s): 2012-19479

BEFORE:  DONOHUE, SHOGAN, and WECHT, JJ.

OPINION BY SHOGAN, J.:           **FILED SEPTEMBER 14, 2015**

Appellants, John and/or Jane Doe, appeal from the trial court's December 1, 2014, order granting Gary and Nancy Veloric's motion to compel discovery.  After careful review, we quash.

The trial court summarized the factual and procedural history of this case as follows:

> [Appellees] Gary Veloric and Nancy Veloric [("the Velorics")] filed the Doe Motion seeking a court order compelling [Appellants] John Doe and Jane Doe to appear for a deposition. After briefing and argument, the [trial court] granted the relief requested by [the Velorics] and ordered the Doe(s) to appear for deposition ("the Doe Order.").[3]  The Doe(s) refused to appear and attend the deposition and filed the present appeal. Recently, as discussed in more detail below, [the Velorics] deposed Brad Heffler which in turn resulted in an appeal to the Pennsylvania Superior Court at Docket Number 2998 EDA 2014

("the Heffler Appeal".) Both the Heffler Appeal and the Doe Appeal involve motions to compel discovery in the underlying Complaint.

> [3] The [trial court] ordered the [Appellants] to appear for deposition within thirty days. *See*, Order dated 12/1/14 and docketed 12/3/14.

In the Complaint, [the Velorics] seek damages on behalf of Gary Veloric for defamation, slander, libel, injurious falsehood, and intentional infliction of emotional distress, and, damages for loss of consortium on behalf of Nancy Veloric. [The Velorics] averred that Nancy Veloric received a phone call on January 18, 2012 from an unidentified woman ("Jane Doe") who claimed to be Gary Veloric's girlfriend and [Jane Doe] was angry because he was having sexual relations with another woman. Nancy Veloric questioned her husband regarding the phone call and he denied the anonymous caller's claims. After some research, Nancy Veloric determined the phone number of the unidentified caller included a Nashville, Tennessee area code, and was no longer in service. Later in 2012, two emails were sent to Nancy Veloric, alleging additional infidelities by her husband. Gary Veloric denied these allegations.

[The Velorics] proceeded with discovery and issued subpoenas to third parties Brad and Andrea Heffler to attend and testify at depositions. The Velorics and the Hefflers share a litigious history dating back several years to a time when they shared a property line.[9] In the Heffler Appeal, Brad Heffler was deposed by [Appellants] on March 14, 2014 ("the Deposition"). Heffler invoked the Fifth Amendment and refused to answer several questions posed to him during the Deposition. [The Velorics] filed a motion to compel Brad Heffler's testimony ("the Heffler Motion"), claiming that Heffler invoked the Fifth Amendment "to virtually every question." After hearing and argument ("the Hearing"), the [trial court] ordered Heffler to answer some of the questions at issue and sustained his objections to others ("the Heffler Order"). Continuing to rely upon the Fifth Amendment and/or attorney client privilege, Heffler refused to answer those questions he was ordered to answer that were not otherwise resolved, and, the Heffler Appeal ensued.

9 The Velorics and the Hefflers were previously involved in litigation before the Montgomery County Court of Common Pleas in the Matter of *Gary Veloric and Nancy Veloric v. Brad Heffler and Andrea Heffler, et al.*, docketed at 2009-09902, in which the Velorics' [sic] raised claims of trespass, conversion, waste, negligence, and, nuisance. At the time, the Veloric and Heffler residences shared a property line ("the Trespass Complaint"). There were also related cases at *Gary Veloric and Nancy Veloric v. Montgomery County Lands Trust*, docketed at 2010-2140, and *Gary Veloric and Nancy Veloric v. Whitemarsh Township*, docketed at 2009-42979. Ultimately, a praecipe to settle, discontinue and end was docketed in each of these three cases.

In the present Appeal, the Doe(s) refused to appear and attend the scheduled deposition, despite the issuance of the Doe Order requiring them to do so. The Doe(s) refusal to attend was also based on Fifth Amendment grounds.

Trial Court Opinion, 4/13/15, at 1-4 (some internal footnotes omitted).

Appellants present the following issue for our review:

Did the lower court err in granting [the Velorics'] Motion to Compel the deposition(s) of Appellant(s) where Appellant(s) asserted their privilege against self-incrimination guaranteed by the Constitutions of the United States and the Commonwealth of Pennsylvania and where compelling Appellant(s) to appear for their deposition(s) is tantamount to requiring them to relinquish their constitutional protections[?]

Appellants' Brief at 4.

Before addressing the merits of Appellants' claims, we must determine

whether this matter is properly before us. Pennsylvania law makes clear:

[A]n appeal may be taken from: (1) a final order or an order certified as a final order (Pa.R.A.P. 341); (2) an interlocutory order as of right (Pa.R.A.P. 311); (3) an interlocutory order by permission (Pa.R.A.P. 312, 1311, 42 Pa.C.S.A. § 702(b)); or (4) a collateral order (Pa.R.A.P. 313).

*Berkeyheiser v. A-Plus Investigations, Inc.*, 936 A.2d 1117, 1123 (Pa. Super. 2007). "A final order is one that disposes of all the parties and all the claims, is expressly defined as a final order by statute, or is entered as a final order pursuant to the trial court's determination." *Id.* (citing Pa.R.A.P. 341(b)(1)-(3)). "[T]he appealability of an order goes directly to the jurisdiction of the Court asked to review the order." *Berkeyheiser*, 936 A.2d at 1123.

We further note that most "discovery orders are deemed interlocutory and not immediately appealable because they do not dispose of the litigation." *Dougherty v. Heller*, 97 A.3d 1257, 1261 (Pa. Super. 2014) (*en banc*) (citation omitted), *appeal granted in part*, 109 A.3d 675 (Pa. 2015). However, certain discovery orders, particularly those involving ostensibly privileged material, have been found to be immediately appealable as collateral orders pursuant to Pa.R.A.P. 313. *Dougherty*, 97 A.3d at 1261.

Appellants argue that this Court has jurisdiction over this matter pursuant to Pa.R.A.P. 313. Appellants' Brief at 9. The Velorics, conversely, contend that this Court lacks jurisdiction over this matter, and that the order at issue is not a collateral order pursuant to Pa.R.A.P. 313. The Velorics' Brief at 1-2. Accordingly, the Velorics assert, this Court should quash this

appeal and remand this case to the trial court for further proceedings. *Id.* at 2.

> A collateral order is an order [1] separable from and collateral to the main cause of action where [2] the right involved is too important to be denied review and [3] the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

Pa.R.A.P. 313(b); *Dougherty*, 97 A.3d at 1261. "All three factors must be present before an order may be considered collateral." *Dougherty*, 97 A.3d at 1261.

Additionally, in addressing collateral orders, our Supreme Court has explained:

> [T]he collateral order doctrine is a specialized practical application of the general rule that only final orders are appealable as of right. Thus, Rule 313 must be interpreted narrowly, and the requirements for an appealable collateral order remain stringent in order to prevent undue corrosion of the final order rule.

*Melvin v. Doe*, 836 A.2d 42, 46-47 (Pa. 2003).

In the present case, the order on appeal is the discovery order, entered December 1, 2014, directing Appellants Doe to appear for depositions. Appellants assert that an appeal may be taken as of right from this order because it is a collateral order, as it meets the three prongs of the collateral order test set forth in Pa.R.A.P. 313(b). *Id.* First, Appellants contend, the issue of their privilege against self-incrimination, guaranteed by the Fifth Amendment of the United States Constitution and Article I § 9 of the Constitution of the Commonwealth of Pennsylvania, is separate from the

merits of the Velorics' underlying claims of defamation. *Id.* Appellants next claim to have met the second prong as the privilege against self-incrimination is "deeply rooted in public policy" and goes "beyond the particular litigation at hand." *Id.* at 10. Finally, Appellants assert that their privilege against self-incrimination will be irreparably lost if review were postponed until final judgment of the court. *Id.* at 11. Appellants contend that "[a]ppearing at a deposition would inevitably result in the disclosure of Appellant(s)['] identit(ies), and Appellant(s)['] identit(ies) alone could subject them to criminal prosecution." *Id.* at 12. The "criminal prosecution" anticipated by Appellants is for the unlawful use of a computer, that carries a five-year statute of limitations which has not yet run. *Id.* at 12, 16.

As noted above, an otherwise interlocutory order may be immediately appealable as a collateral order if it satisfies all three prongs of the collateral order test. *Dougherty*, 97 A.3d at 1261. Significantly, Pennsylvania courts have held that discovery orders involving potentially confidential and privileged materials are immediately appealable as collateral to the principal action. *Id.* Here, Appellants have invoked their Fifth Amendment rights in refusing to attend the deposition, so as not to reveal their identity. Thus, a determination of whether Appellants have properly invoked the Fifth Amendment privilege is relevant to the determination of whether the discovery order is a collateral order.

> The Fifth Amendment, in relevant part, provides that no person "shall be compelled in any criminal case to be a witness

against himself." U.S. Const. Amend. V. "The Fifth Amendment not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Lefkowitz v. Turley*, 414 U.S. 70, 77, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973). "[T]he availability of the [Fifth Amendment] privilege does not turn upon the type of proceeding in which its protection is invoked, but upon the nature of the statement or admission and the exposure which it invites." *Estelle v. Smith*, 451 U.S. 454, 462, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981) (citation omitted). The Fifth Amendment privilege against self-incrimination can be asserted in any proceeding "in which the witness reasonably believes that the information sought, or discoverable as a result of his testimony, could be used in a subsequent state or federal criminal proceeding." *United States v. Balsys*, 524 U.S. 666, 672, 118 S.Ct. 2218, 141 L.Ed.2d 575 (1998).

*Commonwealth v. Brown*, 26 A.3d 485, 493-494 (Pa. Super. 2011).

In determining whether an order is a collateral order, first, the order must be separate and distinct from the underlying cause of action. *Berkeyheiser*, 932 A.2d at 1123. This prong is met by the order *sub judice*. The question of whether the Appellants properly invoked their Fifth Amendment constitutional rights against self-incrimination may be addressed without consideration of the merits of the Velorics' underlying defamation action.

The second prong of the collateral order test mandates that the order "must involve rights deeply rooted in public policy going beyond the particular litigation at hand." *Berkeyheiser*, 936 A.2d at 1123. The courts of this Commonwealth have held that discovery orders raising questions of

privilege and privacy interests all raise the type of deeply rooted public policy concerns necessary to qualify as a collateral order. **_See Commonwealth v. Dennis,_** 859 A.2d 1270, 1278 (Pa. 2004) (finding a discovery order compelling the production of defense notes taken during jury selection process was a collateral order where the question of privilege involving the work-product doctrine involved one of the most fundamental tenets of our system of jurisprudence, deeply rooted in public policy); **_Ben v. Schwartz_**, 729 A.2d 547, 552 (Pa. 1999) (determination as to whether investigative files of Bureau of Professional and Occupational Affairs "are subject to any executive or statutory privilege implicates rights rooted in public policy, and impacts on individuals other than those involved in this particular litigation."); **_Berkeyheiser_**, 936 A.2d at 1124 ("the issues of attorney-client and work-product privileges, as well as privacy concerns, [in an order directing defendant to turn over discovery materials,] implicate rights deeply rooted in public policy, especially where the disclosure of such information affects individuals other than those involved in this particular case.").

While we agree that the privilege against self-incrimination is protected under both the United States and Pennsylvania Constitutions, **_see_** U.S. Const., Amend. V; Pa. Const., Art. I, § 9, and is so engrained in our nation that it constitutes a right "deeply rooted in public policy," **_Berkeyheiser_**, 936 A.2d at 1123, we cannot agree that Appellants have

properly invoked that privilege in this case. Appellants have not invoked the privilege in the context of refusing to provide self-incriminating testimony. Instead, Appellants have refused to **appear** for a deposition or provide **any testimony** on the basis that doing so will reveal their identities.

As this Court has recognized, the United States Supreme Court in *Hiibel v. Sixth Judicial District Court of Nevada*, 542 U.S. 177 (2004), concluded the following regarding the Fifth Amendment: "The Fifth Amendment states that '[n]o person ... shall be compelled in any criminal case to be a witness against himself.' To qualify for the Fifth Amendment privilege, a communication must be testimonial, incriminating and compelled." *Commonwealth v. Reed*, 19 A.3d 1163, 1167 (Pa. Super. 2011).

Here, Appellants are not seeking to invoke the privilege against self-incriminating compelled testimony as identified in *Hiibel*. Instead, Appellants seek to use the Fifth Amendment privilege as a blanket protection allowing them to hide their identities and avoid appearance for a court-ordered deposition. We cannot agree that such overarching protection is afforded by the Fifth Amendment.

"The Fifth Amendment privilege is not self-executing, and answers are generally not considered compelled 'within the meaning of the Fifth Amendment unless the witness is required to answer over his valid claim of the privilege.'" *Commonwealth v. Knoble*, 42 A.3d 976, 979 (Pa. 2012).

Our Supreme Court has provided the following explanation regarding a witness's invocation of the Fifth Amendment privilege:

> When an individual . . . is called to testify . . . in a judicial proceeding, he or she is not exonerated from answering questions merely upon a declaration that in so doing it would be self[-]incriminating.  It is also for the court to judge if the silence is justified, and an illusory claim should be rejected.  However, for the court to properly overrule the claim of privilege, it must be **perfectly clear** from a careful consideration of all the circumstances, that the witness is mistaken in the apprehension of self-incrimination and the answers demanded **cannot possibly** have such tendency.

***Commonwealth v. Long***, 625 A.2d 630, 634 (Pa. 1993) (emphasis in original) (citations omitted).

Thus, an attempt to invoke the Fifth Amendment privilege is specific to the testimony being compelled.  A court's decision whether to allow an individual to invoke the privilege takes into account the context of the proposed testimony and must involve a determination as to whether such testimony would be self-incriminating.  Here, Appellants are not objecting to any specific compelled testimony;  Appellants simply want to invoke the privilege so as to avoid providing **any testimony**.  As a result, there is no proposed testimony for a court to consider in the context of the privilege and whether such testimony would be self-incriminating.

Not only have Appellants failed to identify testimony that would be self-incriminating, they have also failed to provide authority supporting their claim that the Fifth Amendment provides a blanket protection against providing the basic information of their identity.  The Pennsylvania Supreme

- 10 -

Court has opined that an individual "does not have an expectation of privacy in his name and address that society is willing to recognize as reasonable and legitimate." *Commonwealth v. Duncan*, 817 A.2d 455, 469 (Pa. 2003). Indeed, in the criminal context, we have ruled that defendants cannot properly invoke the Fifth Amendment privilege to shield them from revealing their identity. *See Commonwealth v. Durr*, 32 A.3d 781, 786 (Pa. Super. 2011) (holding there was no Fifth Amendment violation in compelling the defendant to provide his name because his name could not be used to establish guilt of a crime, nor did identity itself give rise to a criminal charge).

Moreover, our Supreme Court has stated the following in addressing the protections of the Fifth Amendment privilege:

> "The purpose of the constitutional provision is to prohibit the compulsory oral examination of the prisoner * * *-to prevent his being required to incriminate himself by speech or the equivalent of speech: *Commonwealth v. Valeroso*, 273 Pa. 213, 219, 220, 116 A. 828, 830."
>
> Prior and subsequent decisions have likewise interpreted and limited the constitutional immunity from self-incrimination to speech, or the equivalent of speech, as former Chief Justice STERN so clearly said in *Commonwealth v. Musto*, *supra*. For example, in *Commonwealth v. Fletcher*, 387 Pa. 602, 128 A.2d 897, the District Attorney was permitted to call the jury's attention to defendant's peculiar manner of walking, even though defendant had not taken the witness stand. In *Commonwealth v. Statti*, 166 Pa.Super. 577, 73 A.2d 688, the Court held that "certainly one lawfully arrested may not refuse to submit to finger printing, nor to a search of his person. So also the constitutional privilege does not allow a defendant to refuse a witness the opportunity of seeing him and hearing his voice, for the purpose of identification. *Cf. Johnson v.*

- 11 -

***Commonwealth***, 115 Pa. 369, 395, 9 A. 78. The privilege did not prevent the Commonwealth from requiring some of the defendants to stand in the presence of the jury, as they were identified by a witness in ***Commonwealth v. Safis et al.***, 122 Pa.Super. 333, 186 A. 177."

***Commonwealth v. Aljoe***, 216 A.2d 50, 53 (Pa. 1966).

The United States Supreme Court has also explained that the Fifth Amendment privilege applies only to testimony, as follows:

> The Self–Incrimination Clause of the Fifth Amendment provides that no "person ... shall be compelled in any criminal case to be a witness against himself." Although the text does not delineate the ways in which a person might be made a "witness against himself," ***cf. Schmerber v. California***, 384 U.S. 757, 761–762, n. 6, 86 S.Ct. 1826, 1831, n. 6, 16 L.Ed.2d 908 (1966), we have long held that the privilege does not protect a suspect from being compelled by the State to produce "real or physical evidence." ***Id.*** at 764, 86 S.Ct. at 1832. Rather, the privilege "protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature." ***Id.***, at 761, 86 S.Ct. at 1830. "[I]n order to be testimonial, an accused's communication must itself, explicitly or implicitly, relate a factual assertion or disclose information. Only then is a person compelled to be a 'witness' against himself." ***Doe v. United States***, 487 U.S. 201, 210, 108 S.Ct. 2341, 2347, 101 L.Ed.2d 184 (1988).

***Pennsylvania v. Muniz***, 496 U.S. 582, 588-589 (1990).

This Court, in quoting the United States Supreme Court decision in ***Schmerber v. California***, 384 U.S. 757 (1966), has further explained:

> It is clear that the protection of the privilege reaches an accused's communications, whatever form they might take, and the compulsion of responses which are also communications, for example, compliance with a subpoena to produce one's papers. ***Boyd v. United States***, 116 U.S. 616. On the other hand, both federal and state courts have usually held that **it offers no protection against compulsion** to submit to fingerprinting,

- 12 -

photographing, or measurements, to write or speak for identification, **to appear in court**, to stand, to assume a stance, to walk, or to make a particular gesture. The distinction which has emerged, often expressed in different ways, is that the privilege is a bar against compelling "communications" or "testimony," but that compulsion which makes a suspect or accused the source of "real or physical evidence" does not violate it. *Id.* at 763—764, 86 S.Ct. at 1832.9

*Commonwealth v. Robinson*, 324 A.2d 441, 447-448 (Pa. Super. 1974) (emphasis added).

In this case, Appellants have not invoked the privilege in the context of compelled testimony. Instead, Appellants seek to not have to appear for their depositions. As outlined above, the privilege does not apply to noncommunicative acts, such as having to appear in court. Appellants' **appearance** at the deposition is a noncommunicative act and is thus not, in and of itself, protected by the Fifth Amendment.

Additionally, it is important to note that it would not be Appellants' appearance at the deposition that would give rise to a potential criminal charge. Instead, if criminal charges were to follow, Appellants' alleged actions of using a computer would give rise to the criminal charge.

Moreover, at this point in the civil defamation trial, there is no threat of a future criminal proceeding. Relevant case law provides that Appellants have the burden to demonstrate they have "reasonable cause to apprehend" a "real danger of prosecution" should they be compelled to appear. *Commonwealth v. Carrera*, 227 A.2d 627, 629 (Pa. 1967), *superseded by*

*statute on other grounds*, ***Commonwealth v. Swinehart***, 664 A.2d 957

(Pa. 1995).  The Supreme Court has made clear:

> The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself – his say-so does not of itself establish the hazard of incrimination.  It is for the court to say whether his silence is justified, and to require him to answer if "it clearly appears to the court that he is mistaken."

***Hoffman v. U.S.***, 341 U.S. 479, 486 (1951).  Here, Appellants have failed

to satisfy this burden.

It is questionable whether Appellants' alleged computer activity can

provide a basis for a charge of unlawful use of a computer, as asserted by

Appellants.  ***See*** 42 Pa.C.S. § 5552(b) (outlining statutes of limitations);[1] 18

Pa.C.S. § 7611 (Unlawful Use of A Computer and Other Computer Crimes).

The crime of unlawful use of a computer, codified at 18 Pa.C.S. § 7611,

provides that a person commits the offense if he:

> (1) **accesses or exceeds authorization to access**, alters, damages or destroys **any computer, computer system, computer network**, computer software, computer program, computer database, World Wide Web site or telecommunication device or any part thereof with the intent to interrupt the normal functioning of a person or to devise or execute any scheme or artifice to defraud or deceive or control property or services by means of false or fraudulent pretenses, representations or promises;

---

[1] The crime of unlawful use of a computer is listed in Section 5552(b) as "section 3933 (relating to unlawful use of a computer)."  42 Pa.C.S. § 5552(b).  However, Section 3933 was repealed in 2002 and replaced by Section 7611.  ***See***  2002, Dec. 16, P.L. 1953, No. 226, §  3 , effective in 60 days.

(2) **intentionally and without authorization accesses or exceeds authorization to access, alters, interferes with the operation of, damages or destroys any computer, computer system**, computer network, computer software, computer program, computer database, World Wide Web site or telecommunication device or any part thereof; or

(3) **intentionally or knowingly and without authorization gives or publishes a password, identifying code, personal identification number** or other confidential information about a computer, computer system, computer network, computer database, World Wide Web site or telecommunication device.

18 Pa.C.S. § 7611(a) (emphasis added).

The facts alleged in the instant complaint assert that the Does sent two anonymous, defamatory e-mails to Nancy Veloric. There are no allegations that the Does, without authorization, accessed a computer or computer system or knowingly published a password or identifying information. It is not clear that simply sending a defamatory e-mail would constitute a violation of the statute. Significantly, Appellants provide no analysis establishing that their appearance at the deposition might support a charge of unlawful use of a computer as delineated in 18 Pa.C.S. § 7611. While Appellants are not required to provide potentially incriminating answers to the questions before asserting their Fifth Amendment privilege, they must demonstrate "reasonable cause to apprehend danger[.]" *Hoffman*, 341 U.S. at 486. This they failed to do.

Furthermore, in *AmerisourceBergen Corp. v. Does*, 81 A.3d 921 (Pa. Super. 2013), this Court was presented with a similar scenario in which the appellants sought to maintain their anonymity after being sued as "John

Does."   In that case, the appellants unlawfully used a corporate executive's identity to post comments on a website regarding that company's financial status.   *Id.* at 924.   Seeking to keep their identities secret, the appellants invoked their First Amendment rights.   The trial court, however, granted a motion to compel disclosure of the individuals' identities.   *Id.* at 923.   On appeal, this Court considered whether the order compelling disclosure of the appellants' identities was a collateral order.   *Id.* at 927.   The panel concluded as follows:

> [W]e are constrained to find that Appellants have no protectable interest in their identities sufficient to outweigh Appellees' right to identify Appellants for purposes of seeking legal redress for Appellants' illegal appropriation of [the executive's] name in a public forum.   Consequently, Appellants have failed to meet the "stringent" collateral order test by demonstrating that the right at issue, if any, is a right "deeply rooted in public policy."

*Id.* at 931-932.

Here, too, we find that Appellants have no protectable interest in their identities sufficient to outweigh the Velorics' right to identify Appellants for purposes of seeking legal redress.   As a result, Appellants have failed to meet the collateral order test by demonstrating that the right at issue is a right "deeply rooted in public policy."

Accordingly, we are compelled to conclude that Appellants have failed to meet the second prong of the collateral order test.   As noted, the Fifth Amendment is intended to protect against compelled self-incriminating testimony or communications.   For reasons outlined previously, Appellants

- 16 -

are not seeking protection from compelled testimony but instead, are seeking a blanket protection from providing any testimony or revealing their identities. Thus, despite framing their claim as an invocation of their Fifth Amendment rights against self-incrimination, the protection Appellants seek is not afforded by the Fifth Amendment nor is it "deeply rooted in public policy." As a result, Appellants have failed to meet the second prong of the collateral order test.

Thus, we cannot agree with Appellants' assertion that the discovery order is an appealable collateral order. **Dougherty**, 97 A.3d at 1261 (stating that all three prongs of Rule 313(b) must be met before an order may be subject to a collateral appeal). As a result, we cannot reach the merits of Appellants' issue because this is an interlocutory appeal and we lack jurisdiction. **Id.**

Appeal quashed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/14/2015