# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania by :
Attorney General Michelle Henry :
                                      : No. 126 C.D. 2025
                  v. :
                                        : Argued: April 13, 2026
Sherry Tenney, individually and :
Tenney's Fiber Farm, LLC, :
                            Appellants :

BEFORE:   HONORABLE ANNE E. COVEY, Judge
                 HONORABLE LORI A. DUMAS, Judge
                 HONORABLE STELLA M. TSAI, Judge

## _OPINION NOT REPORTED_

**MEMORANDUM OPINION BY**
**JUDGE DUMAS**                                      **FILED: May 6, 2026**

Sherry Tenney (Tenney) and Tenney's Fiber Farm, LLC (Company) (collectively, Appellants) appeal from the order entered by the Court of Common Pleas of Franklin County (trial court) on January 7, 2025, which granted the Commonwealth's motion to strike. In this order, the trial court directed Appellants to serve full and complete responses to certain interrogatories and requests for the production of documents to which Appellants had asserted the Fifth Amendment privilege against self-incrimination.[1] The court rejected Company's assertion of the

---

[1] U.S. Const. amend. V; _see also_ Pa. Const. art. I, § 9. Generally, the privilege against self-incrimination protects an individual from being called as a witness against himself or herself in both criminal and civil proceedings, formal or informal, where the answers to questions might incriminate the individual in future criminal proceedings. _See Caloric Corp. v. Unemployment Comp. Bd. of Rev._, 452 A.2d 907, 909 (Pa. Cmwlth. 1982).

right, stating that such a right does not exist for corporations like Company or for the custodians of corporate records. The court further reasoned that Tenney could assert the privilege in her individual capacity, but must provide sufficient specificity and justification. After careful review, we quash in part, vacate in part, and remand for proceedings consistent with this decision.

## I. BACKGROUND[2]

Tenney is the sole owner of Company, a single-member Limited Liability Company that sold fiber art supplies. The Commonwealth filed a civil complaint against Tenney individually and against Company, asserting violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law,[3] as well as the Federal Trade Commission's Mail, Internet, or Telephone Order Merchandise Rule.[4]

Appellants filed preliminary objections asserting, *inter alia*, that the complaint lacked sufficient specificity because it failed to differentiate between Tenney and Company. The trial court resolved the preliminary objections, relevantly concluding that Appellants were sufficiently placed on notice that both had allegedly participated in the harms and violations set forth in the complaint. Thereafter, the Commonwealth filed an amended complaint. Specifically, the amended complaint alleged that Appellants advertised and offered to sell fiber art supplies through a personal website and online marketplaces, including Etsy and Facebook, but failed to deliver purchased merchandise and failed to issue refunds to customers.

---

[2] Unless otherwise stated, we derive the background on the trial court's Pennsylvania Rule of Appellate Procedure (Pa.R.A.P.) 1925(a) Opinion. *See* Pa.R.A.P. 1925(a) Op., 3/12/25.

[3] Act of Dec. 17, 1968, P.L. 1224, *as amended*, 73 P.S. §§ 201-1–201-9.2.

[4] 16 C.F.R. § 435.2.

The Commonwealth subsequently filed a motion to compel discovery based on Appellants' failure to provide full and complete responses to several interrogatories and requests for production of documents. Appellants objected, asserting that they had already provided the requested information and that the information sought was irrelevant. At a status conference, Appellants indicated that they intended to assert their Fifth Amendment privilege against self-incrimination if the trial court granted the motion to compel. The trial court granted the motion and ordered Appellants to provide discovery within 30 days. Appellants filed supplemental responses; however, instead of providing substantive answers, Appellants asserted the Fifth Amendment privilege against self-incrimination in response to each interrogatory and request for production of documents.[5]

---

[5] Specifically, each response to the discovery requests for interrogatories 3 and 4, and document requests 1, 3, and 12 reads:

> [Appellants] supplement this response pursuant to the Order of Court dated October 14, 2024 as follows: To the extent additional information is required in response to this [discovery request] in order to fully comply with Order of Court, [Appellants] assert the following: "On the advice of counsel, I respectfully decline to answer this question as it may tend to incriminate me, invoking my Fifth Amendment privilege against self-incrimination under the U.S. Constitution and my rights under the Pennsylvania Constitution."

Suppl. Resps. to Disc. Reqs. Pursuant to Order of Ct. Dated Oct. 14, 2024 (Suppl. Resps.), dated 11/12/24. Additionally, each answer to interrogatory 5, and document requests 7, 8, 9, and 10 reads:

> [Appellants] supplement this response pursuant to the Order of Court dated October 14, 2024 as follows: On November 4, 2024, [Appellants] served a Request for Production of Documents seeking the investigative file of the Pennsylvania Office of Attorney General (OAG) as well as the documents which were originally supplied to OAG pursuant to the Administrative Subpoena dated May 17, 2022. Having not yet received those documents, [Appellants] cannot (other than taking the word of counsel for [the Commonwealth]) verify what documents and information were previously provided and thus not required to be produced again. To the extent additional information is required in response to this [discovery

3

On December 27, 2024, the Commonwealth filed its motion to strike, alleging that Appellants failed to serve full and complete discovery responses. The Commonwealth suggested that the trial court should prohibit Company from invoking the Fifth Amendment in its corporate capacity. Appellants answered, relevantly contesting this point, asserting that Tenney's rights as an individual "trump" the Commonwealth's right to discovery from Company, a limited liability company, wherein "production would necessarily come from her personally." Answer to Mot. to Strike, 12/31/24.

---

request] in order to fully comply with Order of Court, [Appellants] assert the following: "On the advice of counsel, I respectfully decline to answer this question as it may tend to incriminate me, invoking my Fifth Amendment privilege against self-incrimination under the U.S. Constitution and my rights under the Pennsylvania Constitution."

Suppl. Resps., dated 11/12/24. (document request 7 adding that Appellants supplied an attached document "TENNEY000316-TENNEY000328"). Finally, Appellants response to document request 11 reads:

[Appellants] supplement this response pursuant to the Order of Court dated October 14, 2024 as follows: References to redaction apply only to handwritten notes places on the original pages provided by [Appellants] to Counsel for [Appellants] which were intended to assist Counsel for [Appellants] to understand the conversations and were not part of the original document. These pages with handwritten comments are being provided to the Court for in camera review as per the Order of the Court. The balance of the conversations on the pages has not been redacted but simply appears to be of poor reproduction quality in light of the form of the original paper document provided to Undersigned Counsel by [Appellants].

To the extent additional information is required in response to this [discovery request] in order to fully comply with Order of Court, [Appellants] assert the following: "On the advice of counsel, I respectfully decline to answer this question as it may tend to incriminate me, invoking my Fifth Amendment privilege against self-incrimination under the U.S. Constitution and my rights under the Pennsylvania Constitution."

Suppl. Resps., dated 11/12/24.

The trial court granted the motion to strike. It directed Company to serve full and complete responses to the Commonwealth's interrogatories and requests for document production, stating that an "artificial entity," including a limited liability company such as Company, has no Fifth Amendment privilege against self-incrimination. The trial court further ordered that Tenney, in her individual capacity, must serve full and complete responses to the discovery requests and, to the extent she intended to assert any privilege, she must do so with specificity and provide justification for the privilege asserted.[6]

Appellants timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued a responsive opinion. Following an initial review, this Court directed the parties to address the appealability of the trial court's order in their briefs. *See* Cmwlth. Ct. Order, 9/8/25.

---

[6] Specifically, the trial court's order states:

> Corporate Defendant, Tenney's Fiber Farm, LLC, shall serve full and complete responses within twenty (20) days of the date of this Order. Corporate Defendant shall not invoke or refuse to respond to alleging the right against self-incrimination as such right does not exist for corporations, including Corporate Defendant.
>
> Individual Defendant Sherry Tenney shall serve full and complete responses as to Interrogatories 3, 4, 5, and Document Requests 3, 7, 8, 9, 10, 11, and 12 within twenty (20) days of the date of this Order. Should Individual Defendant invoke any privilege or obligation, she shall state with specificity the justification as to said privilege or objection.
>
> Further, Defendants shall provide all documents identified by the Commonwealth in the Commonwealth's November 5, 2024 e-mail to Defendants' Counsel.
>
> Defendants shall provide their responses to the Commonwealth within twenty (20) days of the date of this order.

Trial Ct. Order, 1/7/2025.

## II. ISSUES

Appellants raise two broad issues. First, Appellants assert that the trial court erred in prohibiting Company's invocation of the Fifth Amendment privilege, where Tenney, Company's sole corporate representative, invoked the privilege in her individual capacity, and the discovery requests fail to distinguish between Company and Tenney individually. *See* Appellant's Br. at 4. Second, Appellants contend that the trial court erred by requiring Tenney to "state with specificity the justification" of any asserted privilege when Tenney had already asserted her Fifth Amendment privilege. *See id.*

## III. DISCUSSION[7]

### A. Appealability

Before we address the merits of this case, we must consider whether this appeal is properly before us. This Court directed the parties to address whether the trial court's order is appealable. *See* Cmwlth. Ct. Order, 9/8/25. Appellants acknowledge that discovery orders are usually interlocutory and unappealable but assert the trial court's order falls within the collateral order exception because it concerns the compelled disclosure of privileged material. *See* Appellants' Br. at 19. According to Appellants, their Fifth Amendment assertions can be considered without addressing the merits of the underlying case, Fifth Amendment issues have consistently been recognized as too important to be denied review, and if review of this Fifth Amendment issue is postponed, "Tenney [would be] compelled to testify against herself, [and] the privilege [would] effectively be lost." *See id.* at 21-22.

---

[7] Our review "is limited to determining whether constitutional rights have been violated, whether the trial court abused its discretion, or whether the trial court committed an error of law." *Mojica v. SCI-Mahanoy Sec.*, 224 A.3d 811, 812 n.2 (Pa. Cmwlth. 2020) (quoting *Lichtman v. Glazer*, 111 A.3d 1225, 1227 n.4 (Pa. Cmwlth. 2015)).

6

Conversely, the Commonwealth contends that this Court should quash the appeal for lack of jurisdiction because Appellants are challenging a discovery order, which is a non-final, non-appealable order, and Appellants failed to meet their burden of proof to establish appealability under the collateral order doctrine. *See* Appellee's Br. at 15-16. First, the Commonwealth argues that the discovery order is directly related to the Commonwealth's ability to prove its case and, therefore, is not conceptually distinct from the merits of the case. *See id.* at 16-19. The Commonwealth also argues that Appellants failed to meaningfully develop their separability argument and, thus, failed to meet their burden of establishing jurisdiction. *See id.*

Second, the Commonwealth argues that Company cannot satisfy the "importance" prong of the collateral order doctrine because it cannot assert a Fifth Amendment privilege, so it cannot establish a right "too important to be denied review." *See id.* at 19-22. According to the Commonwealth, artificial entities, including limited liability companies like Company, do not possess a privilege against self-incrimination. *See id.* The Commonwealth contends that this rule applies regardless of the size of the entity, even where the entity is owned and operated by a single individual. *See id.* 20-21. Therefore, Company's appeal must be quashed even if Tenney's individual claims are considered separately. *See id.* at 21-22.

Third, the Commonwealth contends that Tenney's individual rights are not lost if review waits because the trial court did not prohibit Tenney from asserting the Fifth Amendment; rather, the trial court only required her to assert the privilege properly and with specificity so that it could determine whether the privilege applies. *See id.* at 23-26. The Commonwealth asserts that because the trial court has not yet

ruled on the validity of any specific privilege assertion, Tenney has not been compelled to incriminate herself, and therefore, immediate appellate review is unnecessary. *See id.*

Lastly, the Commonwealth argues that many of Appellants' arguments regarding corporate representatives and custodians of records were not preserved because they were not raised before the trial court. *See id.* at 21-22. As such, those arguments are waived and cannot form a basis for collateral order jurisdiction. *See id.*

The appealability of an order goes to the jurisdiction of this Court, an issue the Court may raise *sua sponte*. *See Lin v. Bd. of Revision of Taxes of the City of Phila.*, 137 A.3d 637, 642 (Pa. Cmwlth. 2016). This Court has jurisdiction over appeals from final orders of the courts of common pleas for Commonwealth civil actions or proceedings. *See* 42 Pa.C.S. § 762(a)(1). Final orders dispose of all parties or claims, unless otherwise permitted by statute or certified by a trial court or reviewing body. Pa.R.A.P. 341(a); *Rae v. Pa. Fun. Dirs. Ass'n*, 977 A.2d 1121 (Pa. 2009). An interlocutory order is not a final, appealable order, and this Court may not assume appellate jurisdiction over an interlocutory order, even if the parties consent to it. *See Pa. State Police, Bureau of Liquor Control Enf't v. Apostolis*, 634 A.2d 681, 682-83 (Pa. Cmwlth. 1993). Generally, discovery orders are not considered to be final orders and appealable, as they do not dispose of the litigation. *See K.H. v. Dep't of Hum. Servs.*, 315 A.3d 178, 181 (Pa. Cmwlth. 2024); *Smith v. Phila. Gas Works*, 740 A.2d 1200, 1203 (Pa. Cmwlth. 1999).

However, "[a]n appeal may be taken as of right from a collateral order of a trial court." Pa.R.A.P. 313.[8] The collateral order doctrine considers whether: (1) the order is separable from and collateral to the underlying action; (2) the right involved is too important to be denied review; and (3) if review is postponed until final judgment, the claim will be irreparably lost. *See Fetterman v. Westmoreland Cnty. Childs.' Bureau*, 336 A.3d 277, 282 (Pa. Cmwlth. 2025). Discovery orders involving purportedly privileged material can qualify as collateral orders because, if immediate appellate review is denied, the disclosure of the material cannot later be remedied, and the claimed privilege would be irreparably lost, rendering subsequent appellate review moot. *See id.*

When considering the first prong, our Supreme Court has "consistently distinguished assertions of privilege from the substance of the underlying causes of action." *In re Est. of McAleer*, 248 A.4d 416, 425 (Pa. 2021). "So long as the issue is conceptually distinct from the merits, that is, where, even if practically intertwined with the merits, it nonetheless raises a question that is significantly different from the questions underlying the party's claims on the merits, it is separable from the main cause of action." *Commonwealth v. Williams*, 86 A.3d 771, 782 (Pa. 2014) (quoting *Pridgen v. Parker Hannifin Corp.*, 905 A.2d 422, 433 (Pa. 2006)).

An issue is "important" in terms of the second prong "if the interests that would go unprotected without immediate appeal are significant relative to the efficiency interests served by the final order rule. It is not sufficient that the issue is important to the particular parties involved." *See Williams*, 86 A.3d at 782.

---

[8] The Pennsylvania Rule of Appellate Procedure 313 (Rule 313) defines a collateral order as "an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313.

9

Discovery orders raising questions of privilege and privacy interests all raise the type of deeply rooted public policy concerns necessary to qualify as a collateral order under Rule 313. *See Veloric v. Doe*, 123 A.3d 781, 786 (Pa. Super. 2015) (The Fifth Amendment privilege "is protected under both the United States and Pennsylvania Constitutions . . . and is so engrained in our nation that it constitutes a right deeply rooted in public policy.") (internal quotations omitted); *Commonwealth v. Dennis*, 859 A.2d 1270, 1278 (Pa. 2004) (finding that a discovery order compelling the production of defense notes taken during jury selection to be a collateral order because the question of privilege involving the work-product doctrine involved one of the most fundamental tenets of our system of jurisprudence); *Ben v. Schwartz*, 729 A.2d 547, 552 (Pa. 1999) (determining whether investigative files of the Bureau of Professional and Occupational Affairs are subject to executive or statutory privilege implicates rights rooted in public policy and affects individuals beyond those involved in the present litigation).

An appealing party bears the burden of establishing each element of the collateral order doctrine, and that this obligation is not abrogated merely because the appeal arises from a discovery order involving a claim of privilege. *See In re Est. of McAleer*, 248 A.3d at 425 n.20; *Williams*, 86 A.3d at 780.

Upon review, we conclude that the order in question satisfies each of the three requirements articulated in Rule 313 with respect to Company but satisfies only the first two requirements with respect to Tenney in her individual capacity.

First, the trial court's order is separable from and collateral to the main cause of action because the issue of whether compelling Appellants to answer interrogatories and produce documents violates the Fifth Amendment privilege against self-incrimination can be resolved without consideration of the merits of the

Commonwealth's underlying claims of violations of federal trade commission and consumer protection laws. *See* Pa.R.A.P. 313; *Williams*, 86 A.3d at 782.

Second, courts in this Commonwealth have consistently recognized that the Fifth Amendment privilege against self-incrimination is a right deeply rooted in public policy and one that is too important to be denied review. *See Veloric*, 123 A.3d at 786; *Dennis*, 859 A.2d at 1278; *Schwartz*, 729 A.2d at 552.

Third, with respect to Company, the trial court's order prohibits Company from asserting a Fifth Amendment privilege and compels the production of documents and full and complete responses to interrogatories. *See* Trial Ct. Order, 1/7/25. If review were postponed until final judgment, Company's claimed privilege will be irreparably lost because it will have already been compelled to produce the requested discovery, rendering appellate review moot. Accordingly, the third prong of the collateral order doctrine is satisfied as to Company. *See* Pa.R.A.P. 313; *Fetterman*, 336 A.3d at 282.

However, with respect to Tenney in her individual capacity, although the trial court's order directs her to respond to the discovery requests, the order does not prohibit her from asserting any applicable privilege, including the Fifth Amendment privilege against self-incrimination. *See* Trial Ct. Order, 1/7/25. Rather, the trial court directed Tenney to assert any claimed privilege with specificity and to provide justification for the privilege asserted, as Appellants' supplemental response asserted only a generic, blanket claim for Fifth Amendment privilege on behalf of both Appellants. *See id.* Because the trial court has not yet ruled on the validity of any specific assertion of privilege by Tenney individually, her privilege will not be irreparably lost if review is postponed at this stage. *See*

11

Pa.R.A.P. 313; *Fetterman*, 336 A.3d at 282. Thus, the third prong of the collateral order doctrine is not satisfied as to Tenney in her individual capacity. *See id.*

Relatedly, and for completeness, we address Appellants' assertion that the trial court cannot order Tenney to provide more justification as to why her individual privilege exists. Appellants argue that forcing Tenney to explain why she is asserting her privilege against self-incrimination would itself undermine the privilege, and that the trial court can only compel a response if it is "perfectly clear" that the answer could not possibly tend to incriminate Tenney, and the trial court made no such finding. *See* Appellants' Br. at 26-29 (discussing *Hoffman*, 341 U.S. 479 (1951)).

We find that the trial court did not err in directing Tenney to more specifically justify any privilege she wishes to assert, which can include the invocation of her privilege against self-incrimination. Although *Hoffman* suggests a liberal construction of the Fifth Amendment, protecting answers that would furnish a "link in the chain" of incriminating evidence, and that a witness need not prove "the hazard of incrimination" because doing so could undermine the very protection the privilege is intended to afford, the *Hoffman* Court also expresses that the witness is not excused from answering "merely because [s]he declares" that responding would incriminate her; rather, "[her] say-so does not of itself establish the hazard of incrimination." *Hoffman*, 341 U.S. at 486. It remains "for the court to say whether [her] silence is justified." *Id.* So, while *Hoffman* seems to protect against forcing too much explanation, it also requires enough context for the court to evaluate the claim. *Id.* Thus, while *Hoffman* cautions against requiring a witness to disclose *too* much information in support of the privilege, such that the protection is undermined,

it also makes clear that the court must be provided with *sufficient* context to evaluate whether the privilege is properly invoked. *Id.*

Similarly, Pennsylvania courts recognize that the "Fifth Amendment privilege is not self-executing, and answers are generally not considered compelled within the meaning of the Fifth Amendment unless the witness is required to answer over his valid claim of the privilege." *Commonwealth v. Knoble*, 42 A.3d 976, 979 (Pa. 2012). Our Supreme Court has explained that a witness is not exonerated from answering questions merely by declaring that doing so would be self-incriminating; rather, it is for the court to determine whether the silence is justified, and an illusory claim should be rejected. *Commonwealth v. Long*, 625 A.2d 630, 634 (Pa. 1993).

Although a court may overrule a claim of privilege only where it is "perfectly clear" that the witness is mistaken and the answers could not possibly have a tendency to incriminate, that standard governs when a court compels an answer over a claim of privilege. *See id.*; *Veloric*, 123 A.3d at 787. It does not relieve the party asserting the privilege of the burden of providing sufficient information to permit the court to evaluate whether the privilege is properly invoked in the first instance. *Long*, 625 A.2d at 634; *Veloric*, 123 A.3d at 786. Accordingly, the authority cited by Appellants does not preclude the trial court from requiring a party to assert the privilege with sufficient specificity to assess whether the privilege is properly invoked.

### B. Merits

Having determined that the order is appealable as a collateral order with respect to Company, we turn to the merits.

Appellants assert that the trial court erred in compelling Company to respond to the discovery requests but at the same time prohibiting Company from

13

invoking a Fifth Amendment privilege. *See* Appellants' Br. at 22. Appellants aver that since Tenney herself invoked the Fifth Amendment privilege and she is Company's sole corporate representative, she should not be forced to choose between responding for Company and preserving her constitutional rights. *See id.* Instead, Appellants posit that the trial court should have ordered that Company appoint another representative, even someone with no prior connection to the company, and have that person review the records and answer on Company's behalf. *See id.* at 26.

Additionally, Appellants argue that the privilege protects the "act of production" of documents when producing them would itself communicate incriminating facts, such as their existence, possession, or authenticity. *See id.* at 26-29 (citing *United States v. Hubbell*, 530 U.S. 27 (2000), *United States v. Doe*, 465 U.S. 605 (1984), and *Hoffman v. United States*, 341 U.S. 479 (1951), to argue that privilege must be construed liberally and that a witness need not spell out precisely how an answer would incriminate her, because forcing that explanation would itself undermine the privilege). In their view, the trial court can only compel a response if it was "perfectly clear" that the answer could not possibly tend to incriminate Tenney, and the court made no such finding here. *See* Appellants' Br. at 28-29.

Furthermore, Appellants argue that even apart from federal law, the Pennsylvania Constitution forbids the order. They maintain that article I, section 9 is an independent source of protection and that Pennsylvania courts have often interpreted it more broadly than the federal Fifth Amendment.[9] *See id.* at 29-46.

_____

[9] Article I, section 9, Rights of accused in criminal prosecutions, provides:

14

According to Appellants, the Pennsylvania Constitution protects an accused from being compelled "to give evidence" against herself, whereas the Fifth Amendment speaks in terms of being compelled "to be a witness" against oneself. *See id.* at 31-40. Appellants contend that "give evidence" is broader and reaches the compelled discovery responses here, whether or not federal doctrine would classify them as "testimonial." *See id.*

Moreover, Appellants make a historical and policy argument. *See id.* at 40-46. Appellants argue that Pennsylvania's self-incrimination clause has roots in pre-Revolutionary and early state law traditions that broadly protected silence and guarded against inquisitorial compulsion. *See id.* They assert that Pennsylvania precedent has long treated the privilege more expansively than federal law, without the same limitations and restrictions associated with the Fifth Amendment. *See id.* at 45-46. On that basis, Appellants contend that article I, section 9 bars compelling Tenney to answer discovery from her own mind and memory, and therefore, the trial court's order should be reversed on independent state constitutional grounds as well. *See id.*

The Commonwealth responds, asserting that Appellants improperly asserted a blanket Fifth Amendment privilege in response to all discovery requests,

---

In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him, to be confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor, and, in prosecutions by indictment or information, a speedy public trial by an impartial jury of the vicinage; he cannot be compelled to give evidence against himself, nor can he be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land. The use of a suppressed voluntary admission or voluntary confession to impeach the credibility of a person may be permitted and shall not be construed as compelling a person to give evidence against himself.

Pa. Const. art. I, § 9.

which is not permitted under the law. *See* Appellee's Br. at 28. The Commonwealth explains that the Fifth Amendment privilege is not self-executing and must be asserted in response to specific questions, with a showing that answering the question would pose a real risk to self-incrimination. *See id.* at 26-29. Thus, the Commonwealth contends, the trial court's order did not violate Appellants' rights but instead properly required them to assert objections and privileges with specificity, produce non-privileged information, and, where appropriate, provide a privilege log or submit materials for *in camera* review. *See id.* at 29-30. Finally, the Commonwealth argues that Appellants' reliance on the Pennsylvania Constitution is misplaced because the privilege against self-incrimination under article I, section 9, is generally coextensive with the Fifth Amendment, and Pennsylvania courts still require a party asserting the privilege to demonstrate a reasonable basis for doing so. *See id.* at 30-32. The Commonwealth contends that Appellants have failed to develop any factual basis to support a valid privilege claim. *See id.* at 32.

The privilege against self-incrimination is guaranteed by the Fifth Amendment to the United States Constitution and by article I, section 9 of the Pennsylvania Constitution. "[T]he privilege protects an accused from being compelled to testify against [herself], or otherwise provide the State with evidence of a testimonial or communicative nature." *Commonwealth v. Davis*, 220 A.3d 534, 543 (Pa. 2019) (internal quotations omitted). To invoke the Fifth Amendment privilege against the forced provision of information, one must show that the evidence is self-incriminating, that the evidence is compelled, and that the evidence is testimonial in nature. *See United States v. Hubbell*, 530 U.S. 27, 34 (2000); *Davis*, 220 A.3d at 543. "In order to be testimonial, an accused's communication must

16

itself, explicitly or implicitly, relate a factual assertion or disclose information. Only then is a person compelled to be a witness against [herself]." *Id.* (quoting *Doe v. United States*, 487 U.S. 201, 210 (1988)) (internal quotations omitted). "[I]n the realm of the non-physical disclosure of information, the privilege is broad, as compelled testimony that communicates information that may lead to incriminating evidence is privileged even if the information itself is not inculpatory." *Davis*, 220 A.3d at 543.

Generally, "an individual may not assert the Fifth Amendment privilege on behalf of a corporation, partnership or other collective entity," because the privilege protects a person only against being incriminated by her own compelled testimonial communications. *Doe*, 465 U.S. at 608; *see also Bellis v. United States*, 417 U.S. 85, 94 (1974) (observing that because an artificial entity can act only through its officers and agents, allowing an individual to assert a personal Fifth Amendment privilege to resist producing entity records would undermine the rule that the entity itself has no privilege and would frustrate legitimate governmental regulation); *Braswell v. United States*, 487 U.S. 99, 102-04 (1988); *Fisher v. United States*, 425 U.S. 391 (1976). "[I]t is well established that artificial entities, such as corporations, are not protected by the Fifth Amendment." *See Braswell*, 487 U.S. at 102. Further, a corporate officer cannot generally resist a subpoena for corporate records by invoking her personal privilege. *See Wilson v. United States*, 221 U.S. 361 (1911) (holding that a corporate president who possessed corporate letterpress books could not refuse to produce them on Fifth Amendment grounds, even though their contents might incriminate him personally, because the records belonged to the corporation and were held in a representative capacity).

*Doe* was decided in the context of a claim by a sole proprietor and considered whether the compelled production of business records is covered by the Fifth Amendment privilege. *See Doe*, 465 U.S. 201. The *Braswell* Court explains the ruling in *Doe*, with former Chief Justice Rehnquist writing:

> After rejecting the contention that the contents of the records were themselves protected, the Court proceeded to address whether respondent's act of producing the records would constitute protected testimonial incrimination. The Court concluded that respondent had established a valid Fifth Amendment claim. It deferred to the lower courts, which had found that enforcing the subpoenas at issue would provide the Government valuable information: By producing the records, respondent would admit that the records existed, were in his possession, and were authentic.

> Had petitioner conducted his business as a sole proprietorship, *Doe* would require that he be provided the opportunity to show that his act of production would entail testimonial self-incrimination. But petitioner has operated his business through the corporate form, and we have long recognized that, for purposes of the Fifth Amendment, corporations and other collective entities are treated differently from individuals. This doctrine—known as the collective entity rule—has a lengthy and distinguished pedigree.

*Braswell*, 487 U.S. 104. Nevertheless, the *Braswell* Court recognized that "a Fifth Amendment privilege on behalf of the records custodians of collective entities would have a detrimental impact on the Government's efforts to prosecute 'white-collar crime' . . . [w]ere the cloak of the privilege to be thrown around these impersonal records and documents, effective enforcement of many federal and state laws would be impossible." *Id.* at 116.

18

The party asserting the privilege bears the burden of demonstrating that there are reasonable grounds for invoking the privilege, which requires a factual showing that the compelled testimony or production could be incriminating. *See McDonough v. Dep't of Transp.*, 618 A.2d 1258, 1261 (Pa. Cmwlth. 1992). Moreover, the Fifth Amendment privilege must be asserted in response to specific inquiries, and a court must consider the context of the proposed testimony and determine whether it is testimonial and potentially incriminating. *See Doe*, 123 A.3d at 787. Thus, a trial court must evaluate a claim of Fifth Amendment privilege in light of all relevant facts and circumstances. *See Commonwealth v. Kirwan*, 847 A.2d 61, 66 (Pa. 2004).

Although the contents of business records are not privileged, the act of producing documents may, in some circumstances, have testimonial aspects because it may implicitly communicate statements of fact, such as the existence, possession, or authenticity of the documents. *See Doe*, 465 U.S. at 609; *Braswell*, 487 U.S. 104; *Hubbell*, 530 U.S. at 34; *Davis*, 220 A.3d at 542; *Veloric*, 123 A.3d at 788. Whether the act of production is testimonial and incriminating depends upon the facts and circumstances of the particular case. *See Long*, 625 A.2d at 634; *Hoffman*, 341 U.S. 488; *Veloric*, 123 A.3d at 786. Thus, although a collective entity has no Fifth Amendment privilege, an individual may assert a personal privilege where the compelled act of production would itself be testimonial and incriminating as to that individual. *See Doe*, 465 U.S. at 612-14; *Braswell*, 487 U.S. at 104-06.

Here, Appellants' supplemental responses asserted a blanket Fifth Amendment privilege on behalf of both Tenney and Company without distinguishing between the two. *See* Suppl. Resps., dated 11/12/24. The trial court generally determined that Company, as an artificial entity, could not assert a Fifth

19

Amendment privilege, and that Tenney herself could not assert the privilege on behalf of Company as a representative. *See* Trial Ct. Op. 3/12/25. However, the trial court determined that Tenney, in her individual capacity, could assert the privilege if she did so with sufficient specificity and justification. *See* Trial Ct. Order, 1/7/25. *See McDonough*, 618 A.2d at 1261; *Doe*, 123 A.3d at 787; *Kirwan*, 847 A.2d at 66. The trial court stopped its analysis there, even though Appellants had advanced a more particular assertion before the trial court that, because Tenney is the sole member, owner, and only person capable of responding on behalf of Company, compelling the production of discovery would necessarily compel Tenney's own testimonial act of production. *See* Answer to Motion to Strike, dated 12/31/24; *see also* Appellants' Br. at 24-26.

Properly, the trial court's inquiry requires a fact-specific analysis of the nature of the documents sought, the manner in which they are maintained, and whether the act of production would implicitly communicate testimonial information attributable to Tenney personally. *See Doe*, 465 U.S. at 609; *Braswell*, 487 U.S. 104; *Hubbell*, 530 U.S. at 34; *Davis*, 220 A.3d at 542; *Veloric*, 123 A.3d at 788. The trial court's opinion does not address that contention. Instead, it resolves the issue at a categorical level, reasoning that artificial entities possess no Fifth Amendment privilege and that custodians may not withhold corporate records.[10] *See* Trial Ct. Op., 3/12/25. The trial court did not analyze whether, under the circumstances presented here, the requested production would implicate Tenney's personal Fifth Amendment rights. Because the trial court did not address that preserved theory,

---

[10] To be clear, we emphasize that Company, as an artificial entity, has no Fifth Amendment privilege. The question presented is not whether Company may assert the privilege, but whether, under the circumstances presented, compelling Company to produce discovery would necessarily compel Tenney's own testimonial act of production in her individual capacity.

20

appellate review is hindered. Accordingly, we vacate the order as to Company and remand for the trial court to consider and address whether, in light of Tenney's status as sole member and sole records custodian, compelling production from Company would necessarily compel Tenney's own testimonial act of production, implicating her personal Fifth Amendment rights.

## IV. CONCLUSION

Accordingly, we quash the appeal as to Tenney in her individual capacity, because the trial court did not deny her right to assert the Fifth Amendment privilege but merely directed that any such claim be stated with specificity. As such, the trial court's order as to Tenney is a nonappealable order that does not satisfy the collateral order doctrine. *See* Pa.R.A.P. 313; *Fetterman*, 336 A.3d at 282.

Additionally, we vacate the trial court's order as to Company because it did not address Appellants' contention that, because Tenney is Company's sole member and sole records custodian, compelling its production of discovery would necessarily implicate Tenney's personal Fifth Amendment rights. On remand, the trial court shall address that argument and determine its significance, if any, under the governing law. If there is merit to Appellants' argument, then the trial court shall address whether each compelled response falls under the privilege against self-incrimination.

Because of our disposition, we do not reach Appellants' remaining arguments.

_____
**LORI A. DUMAS, Judge**

21

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania by    :
Attorney General Michelle Henry    :
                              :   No. 126 C.D. 2025
            v.                      :
                              :
Sherry Tenney, individually and    :
Tenney's Fiber Farm, LLC    :
                Appellants    :

# O R D E R

AND NOW, this 6th day of May, 2026, the order of the Court of Common Pleas of Franklin County (trial court), entered January 7, 2025, is VACATED as to Tenney's Fiber Farm, LLC, and the matter is REMANDED for the trial court to analyze whether the privilege against self-incrimination for Sherry Tenney individually can extend to Tenney's Fiber Farm, LLC. Additionally, to the extent the trial court recognized that Ms. Tenney may assert any privilege but directed her to provide sufficient justification in support thereof, the appeal of Sherry Tenney, in her individual capacity, is QUASHED.

Jurisdiction relinquished.

**LORI A. DUMAS, Judge**